COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EDWARD ALEXANDER ROMO, | § | No. 08-08-00043-CV |
| Appellant, | § | Appeal from the |
| v. | § | 346th Judicial District Court |
| | § | |
| DANNY PAYNE, COMMISSIONER OF THE TEXAS DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, AND THE STATE OF TEXAS, | § | of El Paso County, Texas |
| | § | (TC# 2004-2258) |
| | § | |
| Appellees. | § | |
| | § | |

**O P I N I O N**

Edward Alexander Romo ("Romo") appeals from a judgment enjoining certain conduct and requiring him to pay restitution, civil penalties, and attorney's fees for violating the Texas Mortgage Broker License Act (the "Broker Act") and the Texas Deceptive Trade Practices Act ("DTPA"). We reverse in part and affirm in part.

Romo is a licensed mortgage broker who operated several businesses in El Paso. Romo's businesses focused on obtaining refinancing for homeowners facing foreclosure. In May 2004, the State of Texas and the Commissioner of the Texas Department of Savings and Mortgage Lending (collectively "the State") sued Romo, alleging that he violated the Broker Act and the DTPA.

The State moved for summary judgment. Among other things, the State asserted that Romo employed Melisa Simpson as an unlicensed loan officer from September 2002 to May

2004 and that he employed Alin Blanchet as an unlicensed loan officer in 2004. As a result of his employing Simpson, Romo received $82,785.28 in profits from January 2004 to April 2004. The State sought a judgment of up to three times this amount. The State also asserted that Romo failed to notify the Commissioner of all of the business names and addresses that he used and that he charged fees that were unreasonable in relation to the services he performed. Specifically, the State contended that it was unreasonable for Romo to charge more than three-to-five percent of the loan amount. The State sought a judgment for the amount of fees Romo charged in excess of three percent, or alternatively five percent, of the loans he brokered from May 2002 through June 2005. In addition, the State sought to enjoin Romo from employing unlicensed loan officers, from operating under assumed names or at addresses not disclosed to the Commissioner, and other injunctive relief. Finally, the State requested up to $20,000 for each DTPA violation and an award of attorney's fees.

In his response to the State's motion, Romo challenged the State's summary judgment evidence regarding the amount of his profits and he argued that his fees were reasonable. He admitted that he was "delayed" in notifying the Commissioner of two of his business names, but offered reasons to justify the delays. Romo further admitted that Simpson worked for him as an unlicensed loan officer, but he asserted that she was not required to have a license. He claimed that Blanchet was only a loan processor, not a loan officer. Romo also filed a summary judgment motion, asserting, among other things, that the State had no evidence to support its claims that Simpson was required to have a license or that he charged unreasonable fees.

Ruling on the competing motions, the trial court determined that: (1) Romo violated the Broker Act by failing to notify the Commissioner of the names and addresses of his businesses;

(2) Romo violated both the Broker Act and the DTPA by employing Simpson and Blanchet as unlicensed loan officers; and (3) Romo earned $82,785 through his employment of Simpson. The court rejected the State's other claims, including its claim that Romo charged unreasonable fees. The court permanently enjoined Romo from: (1) conducting business as a mortgage broker under any assumed name without first notifying the Commissioner of the name; (2) failing to notify the Commissioner of any new business address; and (3) failing to obtain a license certificate for any new address. The court ordered Romo to pay the following amounts: (1) $82,785 as restitution to consumers who paid him fees as a result of his employment of Simpson; (2) $7,500 as a civil penalty for violating the DTPA; and (3) $5,000 as attorney's fees.

Romo raises seven issues on appeal. In his first issue, he argues that the State relied on inadmissible hearsay to establish that he earned $82,785 by employing Simpson. In his second issue, he argues that Simpson was not required to be licensed as a loan officer under the Broker Act. In his third issue, he argues that the State failed to establish the requirements for permanent injunctive relief. In his fourth issue, he argues that employing Simpson as an unlicensed loan officer was not a DTPA violation because she was not required to be licensed under the Broker Act. In his fifth issue, he argues that the State failed to establish the requirements for a civil penalty under the DTPA. In his sixth issue, he argues that Blanchet was a loan processor, rather than a loan officer. And in his seventh issue, he argues that the State was not entitled to recover attorney's fees.

We review a summary judgment *de novo* to determine whether the movant carried the burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *New Wave Techs., Inc. v. Legacy Bank of Texas*, 281 S.W.3d 99, 100

-3-

(Tex.App.--El Paso 2008, pet. denied). We must accept as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor. *W.L. Pickens Grandchildren's Joint Venture v. DOH Oil Co.*, 281 S.W.3d 116, 119 (Tex.App.--El Paso 2008, pet. denied). When both parties move for summary judgment and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides and determine all the questions presented. *Id.*

The central issue in this case is whether the Broker Act required loan officers to be licensed between the years of 2002 and 2004, which is when Romo employed Simpson and Blanchet. If licenses were not required, Romo could not have violated the Broker Act by allowing Simpson to work as a loan officer and there would be no basis for requiring him to disgorge the $82,785 that he earned by reason of her employment, irrespective of whether the State's evidence was inadmissible. Likewise, if licenses were not required, it does not matter whether Blanchet acted as a loan processor or a loan officer. And if Romo did not violate the Broker Act by employing unlicensed loan officers, he also did not violate the DTPA, since the DTPA violation was premised on the conclusion that the Broker Act required licensing. Without the DTPA violation, the $7,500 civil penalty cannot stand, regardless of whether the requirements for imposing a civil penalty were satisfied. Accordingly, rather than consider the issues in the format that they were briefed by Romo, we will first address whether the Broker Act required loan officers to be licensed.

The Broker Act is part of the Texas Finance Code. *See* TEX.FIN.CODE ANN. §§ 156.001-.508 (West 2006 & Supp. 2010). It was enacted in 1999 and has been amended several times. There are no cases construing its scope. Our analysis will therefore center on the statutory

-4-

language and the canons of construction.

When construing statutes, our main goal is to give effect to the Legislature's intent. *In re S.S.A.*, 319 S.W.3d 796, 798 (Tex.App.--El Paso 2010, no pet.). We may consider the object sought to be attained, the circumstances under which the statute was enacted, the legislative history, and the administrative construction of the statute. TEX.GOV'T CODE ANN. § 311.023 (West 2005). The public interest is favored over private interests. *Id*. at § 311.021(5). But our polestar is the statutory language itself. "Where text is clear, text is determinative of [legislative] intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009)(op. on reh'g). We read the language in context, not in isolation, and we presume that the entire statute is intended to be effective and that every word, phrase, and expression was deliberately chosen. *In re S.S.A.*, 319 S.W.3d at 798-99; *see also* TEX.GOV'T CODE ANN. § 311.021(2). We will not depart from the plain meaning unless enforcing the statute as written would produce absurd results. *See In re S.S.A.*, 319 S.W.3d at 798.

Romo cites two of the Broker Act's provisions–Section 156.201(b) and Section 156.204(c) of the Finance Code–to establish that licenses were not required. Between the years 2002 and 2004, Section 156.201(b) stated:

> An individual may not act or attempt to act as a loan officer unless the individual at the time is:
>
> (1)     licensed under this chapter;
>
> (2)     sponsored by a licensed mortgage broker and acting for the mortgage broker; or
>
> (3)     exempt under Section 156.202.

Mortgage Broker License Act, 76th Leg., R.S., ch. 1254, § 2, 1999 TEX.GEN.LAWS 4334, 4337.

By its plain terms, this statute allowed an unlicensed person to act as a loan officer as long as she was sponsored by, and acting for, a licensed mortgage broker.

Section 156.204 sets out the qualifications for mortgage brokers and loan officers. Between 2002 and 2004, Subsection (c)(4) required a person to satisfy one of the following criteria to be licensed as a loan officer:

> (A) the person meets one of the requirements described by Subsection (a)(4) [which pertained to the licensing of mortgage brokers];
>
> (B) the person has successfully completed 15 hours of education courses approved by the commissioner under this section;
>
> (C) the person has 18 months of experience as a loan officer as evidenced by documentary proof of full-time employment as a loan officer with a mortgage broker or a person exempt under Section 156.202; or
>
> (D) for applications received prior to January 1, 2000, the mortgage broker that will sponsor the applicant provides a certification under oath that the applicant has been provided necessary and appropriate education and training regarding all applicable state and federal law and regulations relating to mortgage loans.

*Id.* at 1999 TEX.GEN.LAWS at 4339. Under this subsection, one way to become eligible for a loan officer license was to gain eighteen months of experience as a loan officer with a mortgage broker. Thus, this subsection necessarily contemplated that a person could serve as a loan officer without a license.

Although the plain meaning of Sections 156.201(b)(2) and 156.204(c)(4) indicates that a person did not need a license to work as a loan officer if she was sponsored by a mortgage broker, the State argues that this interpretation cannot be correct when the statutes are read in conjunction with Section 156.406. Section 156.406 provides: "A person who is not exempt under this chapter and who acts as a . . . loan officer without first obtaining a license required

-6-

under this chapter commits an offense." TEX.FIN.CODE ANN. § 156.406(a)(West 2006). This section also provides that a person who receives money for "acting as a . . . loan officer without an active license or being exempt under this chapter is liable for damages . . . ." *Id*. at § 156.406(b). The State suggests that this statute demonstrates that all loan officers must be licensed unless they come within an express statutory exemption. Section 156.202 sets out the exemptions from licensure, and none of the exemptions applies here. *See id*. at § 156.202 (West Supp. 2010). However, the plain language of Section 156.201(b)(2) effectively provided an exemption for persons who were sponsored by a mortgage broker. Section 156.406 does not explicitly reference Section 156.202. Therefore, the Legislature could have intended the word "exempt" in Section 156.406 to refer not only to the exemptions set out in Section 156.202, but also the exemption that is provided by Section 156.201(b)(2). This interpretation harmonizes and gives effect to all of the provisions. The State's interpretation would render ineffective the language of Subsections 156.201(b)(2) and 156.204(c)(4)(C).

Citing legislative history, the State argues that Subsection 156.204(c)(4)(C), which allowed a person to qualify for a licence based on eighteen months of experience, was meant to be a "grandfathering" provision. The bill analysis for the Broker Act states that the Act "would prohibit a person from acting as a loan officer unless the person *currently* was sponsored by a mortgage broker and acting on that person's behalf, unless exempted by law." [Emphasis added]. *See* http://www.lrl.state.tx.us/scanned/hroBillAnalyses/76-0/SB1074.pdf. The State contends that the word "currently" referred to people who were acting as loan officers on the effective date of the legislation. Thus, only people who were acting as loan officers on the effective date could qualify for a license based on eighteen months of experience. But a more

-7-

natural reading of the bill analysis actually supports the plain meaning of Section 156.201(b), which stated that a person could not act as a loan officer unless the person "at the time" was either licensed, exempt under Section 156.202, or "sponsored by a licensed mortgage broker and acting for the mortgage broker." Moreover, there was nothing in the language of Subsection 156.204(c)(4)(C) to suggest that the eighteen-month experience option was limited to people who were acting as loan officers on the effective date of the Broker Act. By contrast, the immediately following subsection–subsection (c)(4)(D)–did include a type of grandfather clause. It stated that "for applications received prior to January 1, 2000," an applicant could obtain a loan officer's license by submitting the sponsoring mortgage broker's certification that the applicant had received training regarding laws governing mortgage loans. Clearly, the Legislature knows how to draft a grandfather clause if that is its intent. *See, e.g., W.H.V., Inc. v. Assocs. Housing Fin., LLC*, 43 S.W.3d 83, 93 (Tex.App.--Dallas 2001, pet. denied)(describing language providing that a statute did not "affect or change the classification of a manufactured home" if it "was permanently affixed to real property before January 1, 1996" as a grandfather clause); *Tex. Dep't of Banking v. Mount Olivet Cemetery Ass'n*, 27 S.W.3d 276, 280 (Tex.App.--Austin 2000, pet. denied)(describing language providing that an "investment . . . included in a plan approved before the effective date of this Act . . . may continue in effect" as a grandfather clause). We will not write a grandfather clause into the statute based merely on the ambiguous use of the word "currently" in one sentence of the legislative history.

The State further argues that the Legislature must have intended for the eighteen-month option to be a temporary, "grandfathering" provision because all of the other options provided by Section 156.204(c) were more rigorous than this option. We disagree with this characterization.

Pursuant to Subsection (c)(4), a person could qualify for a loan officer's license by meeting one of the eligibility requirements for obtaining a broker's license. As might be expected, the eligibility requirements for obtaining a broker's license were more rigorous than the requirements for obtaining a loan officer's license. But Subsection (c)(4) also allowed a person to qualify merely by completing fifteen hours of education courses. This is certainly no more rigorous than completing eighteen months of employment as a loan officer.

Next, the State cites the 2007 amendments to the Broker Act in support of its argument that the eighteen-month option was intended to be a temporary provision. The amendments retained the option of using eighteen months of experience to qualify for a loan officer license, but that experience must have been with a person exempt from licensing under Section 156.202. The experience of working with a mortgage broker would no longer count. *See* Act of June 15, 2007, 80th Leg., R.S., ch. 905, § 6, 2007 TEX.GEN.LAWS 2555, 2256-58.[1] Rather than bolster the State's interpretation, we believe the amendments weaken it. We generally presume that the Legislature intends to change, rather than merely clarify, existing law when it enacts an amendment. *Pub. Util. Comm'n of Texas v. Cities of Harlingen*, 311 S.W.3d 610, 620 n.7 (Tex.App.--Austin 2010, no pet.). The bill analysis for the amendments states that the new legislation "would correct technical issues and remove outdated language." *See* http://www.hro.house.state.tx.us/pdf/ba80r/hb2783.pdf. It also states, "Unless exempted, an

---

[1] Although not mentioned by the State, the 2007 amendments also affected Section 156.201(b). Whereas that statute originally contained three disjunctive provisions, which allowed a person to act as a loan officer if the person was licensed, *or* sponsored by a licensed broker, *or* exempt under Section 156.202, it now sets forth two of those provisions in the conjunctive. A person must be exempt under Section 156.202 *or* both licensed *and* sponsored by a licensed broker. *See* Act of June 15, 2007, 80th Leg., R.S., ch. 905, § 2, 2007 TEX.GEN.LAWS 2555, 2255.

individual could not act as a mortgage loan officer unless the individual was both licensed as a loan officer and sponsored by a licensed mortgage broker." *Id*. These statements support the presumption that the Legislature intended to change the law.

The State asserts that the Broker Act is remedial legislation, which should be interpreted liberally to serve its purpose of protecting consumers. Although we may construe a remedial statute liberally, we cannot ignore its plain language to construe it in a way that we believe supports the Legislature's general purpose. *See Gilmore v. Lumbermen's Reciprocal Ass'n*, 292 S.W. 204, 205 (Tex. Comm'n App. 1927)("'[T]hough the statute is remedial in the broadest sense of the term, to be liberally construed, the court is without power or authority to change the plain language thereof by construing it to mean the reverse of what is clearly stated therein.'").

Finally, the State relies on an affidavit by the Commissioner of the Department of Savings and Mortgage Lending. The Commissioner is charged with administering the Broker Act. *See* TEX.FIN.CODE ANN. § 156.101(a)(West 2010). In his affidavit, the Commissioner claims that the Department has always interpreted the Broker Act as requiring licenses for all loan officers. We must seriously consider the construction of a statute by the agency charged with its enforcement, unless the administrative construction is unreasonable or contradicts the plain language of the statute. *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993). Because the Commissioner's construction contradicts the plain language of the statute, it is not persuasive.

In short, the statutory language is plain, and the State has provided no compelling reason to deviate from it. We have focused on the statutory language because "ordinary citizens should be able to rely on the plain language of a statute to mean what it says." *Fitzgerald v. Advanced*

*Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999). As the Texas Supreme Court recently stated, "[W]e must take statutes as we find them." *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 637 (Tex. 2010). Even if we think that the Legislature made a mistake, we "are not empowered to 'fix' the mistake by disregarding direct and clear statutory language that does not create an absurdity." *Id*. at 638. The statutory language allowing unlicensed loan officers to work for mortgage brokers may not have reflected the ideal policy choice, but it is hardly absurd.

Because licenses were not required for loan officers who were sponsored by and acting for a licensed mortgage broker during the period relevant to this suit, neither Simpson nor Blanchet needed a license. We therefore sustain Romo's second and fourth issues and find it unnecessary to address his first, fifth, and sixth issues.

In addition to its conclusion that Romo violated the Broker Act by employing Simpson and Blanchet as unlicensed loan officers, the trial court also concluded that Romo violated the Broker Act by failing to notify the Commissioner of the names and addresses of his businesses. As a result, the court permanently enjoined Romo from conducting business as a mortgage broker under any assumed name without first notifying the Commissioner of the name, failing to notify the Commissioner of any new business address, and failing to obtain a license certificate for any new address. In his third issue, Romo attacks the injunctive relief on the ground that the State offered no evidence of imminent or irreparable harm or of the lack of an adequate remedy at law. The State argues that it did not have to establish those elements to be entitled to injunctive relief under the DTPA.

The arguments on both sides of this issue are misguided. The trial court did not

-11-

determine that Romo violated the DTPA by failing to notify the Commissioner of the names and addresses of his businesses. Therefore, the DTPA cannot provide authority for the injunctive relief. But that does not mean that the State was required to meet the ordinary requirements for an injunction. The trial court concluded that Romo violated the Broker Act by failing to notify the Commissioner of the names and addresses of his businesses. The Broker Act authorizes the Commissioner of Savings and Mortgage Lending to sue to enjoin a violation of the Act. *See* TEX.FIN.CODE ANN. § 156.103(a)(West 2006). The Broker Act expressly provides that "it is not necessary to allege or prove that an adequate remedy at law does not exist or that substantial or irreparable damage would result . . . ." *Id.* Because the Broker Act dispenses with the requirements of irreparable harm and inadequacy of legal remedies, the lack of evidence on these elements does not invalidate the injunctive relief. Romo's third issue is overruled.

Romo's seventh and final issue concerns the award of $5,000 in attorney's fees. Romo argues that the State was not entitled to attorney's fees because it did not prevail under the DTPA, and the Broker Act does not provide for attorney's fees. He also points out that the State failed to segregate its attorney's fees. The State does not contest Romo's assertion that the Broker Act does not provide for attorney's fees. But it argues that the attorney's fee award was based on Section 402.006 of the Texas Government Code, which does not require segregation of fees. The section cited by the State provides: "In a case in which the state is entitled to recover a penalty or damages the attorney general is entitled, on behalf of the state, to reasonable attorney's fees and court costs." TEX.GOV'T CODE ANN. § 402.006(c)(West 2005). Because the trial court ordered a civil penalty in this case, the State contends that it is entitled to recover attorney's fees. As we have explained above, however, the State was not entitled to recover the civil penalty.

Accordingly, there is no basis for the attorney's fee award. Romo's seventh issue is sustained.

The trial court's judgment is reversed and rendered to the extent that it states that Romo violated the Broker Act and the DTPA by employing unlicensed loan officers and orders him to pay $82,785 as restitution, $7,500 as a civil penalty, and $5,000 in attorney's fees. In all other respects, the judgment is affirmed.


February 9, 2011

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Garcia, Judge
Garcia, Judge (Sitting by Assignment)