**Reversed and Remanded and Opinion filed December 18, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00030-CV

---

## LYDA SWINERTON BUILDERS, INC., Appellant/Cross-Appellee

## V.

## CATHAY BANK, Appellee/Cross-Appellant

---

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2008-64001A**

---

### O P I N I O N

We have seen this lien priority dispute before. We previously reversed the trial court's summary judgment in favor of Cathay Bank and remanded the case to the trial court for further proceedings. *See Lyda Swinerton Builders, Inc. v. Cathay Bank*, 409 S.W.3d 221, 251 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). After a one-day bench trial, the trial court signed a final judgment declaring that "Lyda Swinerton Builders, Inc. holds a [mechanic's] lien interest superior to the

interest of Cathay Bank." The trial court further declared that Lyda Swinerton's second, third, and fourth mechanic's lien affidavits were not timely filed and as a result, its lien interest was limited to $863,301.70, rather than the full amount it had sought. The court rejected Cathay Bank's claim that it was equitably subrogated to a senior tax lien it had satisfied. Both Lyda Swinerton and Cathay Bank appeal from the trial court's judgment.

Lyda Swinerton argues the trial court erred in declaring that the second, third, and fourth lien affidavits were not timely filed because the construction contract at issue was "constructively terminated" ninety days after Lyda Swinerton suspended work on the project. We sustain this issue because the Property Code does not recognize "constructive termination" as a method of determining when an indebtedness accrues on a construction contract.

Cathay Bank raises two issues in its cross-appeal, which we address together. Cathay Bank argues that the trial court's judgment for Lyda Swinerton is erroneous because it rests on two incorrect conclusions of law: (1) Cathay Bank was not equitably subrogated to a senior tax lien because subrogation would prejudice Lyda Swinerton; and therefore (2) Cathay Bank's non-judicial foreclosure of its deed of trust did not extinguish Lyda Swinerton's mechanic's lien. We sustain this consolidated issue in part because the trial court, in its equity analysis, did not consider whether Lyda Swinerton would be unjustly enriched if subrogation of the tax lien were not allowed, or whether subrogation of the tax lien was necessary for the equitable protection of Cathay Bank. Having sustained issues raised by each party to this appeal, we reverse the trial court's judgment and remand the case to the trial court for further proceedings consistent with this opinion.

2

Our prior opinion contains a detailed recitation of the facts and procedural history of this case through the trial court's grant of summary judgment for Cathay Bank; we do not repeat that information here. *See Lyda Swinerton Builders, Inc.*, 409 S.W.3d at 226–29. Below, we summarize the evidence introduced during the one-day bench trial to the extent necessary to resolve the issues on appeal.

Lyda Swinerton entered into a contract to improve real property owned by Park 8. Brian Duncan was Lyda Swinerton's manager in control of the Park 8 construction project. According to Duncan, payment issues arose from the very start of the project. Duncan testified that Park 8 was "paying partial, here and there." During his career of over 30 years in the construction industry, Duncan had never encountered a client that paid as slowly as Park 8. Shortly after Lyda Swinerton filed its first mechanic's lien affidavit, Cathay Bank lent Park 8 money for the project, and part of the loan proceeds were used to satisfy outstanding tax liens against the property.

As a result of Park 8's continued payment issues, on October 4, 2007, Lyda Swinerton suspended work on the Park 8 project. Lyda Swinerton simultaneously ordered all subcontractors on the project to stop work and demobilize. No further work was performed on the project after the October 4, 2007 work suspension.

According to Duncan, Park 8 asked Lyda Swinerton to remain on the work site after it had suspended work. Lyda Swinerton incurred the cost of keeping its construction trailer, a construction crane, and tunnel forms on the site in response to Park 8's request. Lyda Swinerton also continued to store various building materials, such as windows and stairwells, on the site. Despite keeping these items on the site, Lyda Swinerton removed all personnel when it suspended work on the project and it never re-staffed the job. Lyda Swinerton also notified Park 8 that it would not

3

restart the project unless Park 8 agreed to pay it a $500,000 bonus.

Lyda Swinerton continued incurring the cost of the crane and tunnel forms from October 2007 until they were finally removed in July 2008. Duncan explained that the cost of keeping the crane and tunnel forms on the Park 8 site during this period totaled $923,427. Duncan believed this expense was reasonable because the cost of removing the crane and tunnel forms, and then bringing them back to the site when construction resumed, would be greater than the cost of keeping them idle on the site.

Lyda Swinerton kept its trailer and the stored items on site after the crane and tunnel forms were removed. On May 20, 2008, Lyda Swinerton sent Park 8 a notice of intent to terminate the contract. But Lyda Swinerton kept the trailer and other items on the site after it filed suit against Park 8 in October 2008. Duncan explained that Lyda Swinerton was willing to incur these expenses because Park 8 was still seeking financing and continually assured Lyda Swinerton it wanted to complete the project. Lyda Swinerton even stayed on the site after Park 8 declared bankruptcy in April 2009. Duncan explained Lyda Swinerton's willingness to incur these ongoing expenses despite Park 8's obvious financial issues because the parties were "in the middle of this project. If we walk away from the project, that's one avenue of not being able to gain recovery. As long as we're involved and as long as [Park 8] is trying to move forward with the financing, our best option is . . . to stay involved in the project for a better outcome." Lyda Swinerton finally removed its equipment and left the site in March 2010. Despite Lyda Swinerton's having left the site, Duncan testified that Lyda Swinerton never terminated or abandoned the contract.

At the conclusion of the bench trial, the trial court signed a final judgment declaring that Lyda Swinerton held a lien interest superior to that of Cathay Bank, but not in the full amount sought by the builder nor on the entire Park 8 site. The

4

trial court limited Lyda Swinerton's mechanic's lien to $863,301.70 and applied the lien only to Parcel A of the property as defined in our original opinion. *See Lyda Swinerton Builders, Inc.*, 409 S.W.3d at 226, n.1. The trial court also declared that Lyda Swinerton's second, third, and fourth amended lien affidavits were untimely filed and void, and therefore did not impose a lien on any part of the Park 8 property. The trial court declined to award either side attorney's fees.

Lyda Swinerton had filed proposed findings of fact and conclusions of law prior to the bench trial, and it timely requested findings and conclusions after trial. Lyda Swinerton's proposed findings included a request that the trial court find that "neither Park 8 nor [Lyda Swinerton] intended to abandon the Contract at any time before the end of October 2008." Lyda Swinerton also submitted several proposed conclusions of law asking the trial court to conclude that Lyda Swinerton did not abandon or terminate the contract. Conversely, Cathay Bank submitted a proposed finding of fact that Lyda Swinerton "sent a termination letter to Park 8 in May 2008." Cathay Bank also asked the trial court to conclude that Lyda Swinerton "abandoned the contract entered into by and between Park 8 and [Lyda Swinerton] on or before October 4, 2007."

The trial court signed findings of fact and conclusions of law soon after Lyda Swinerton made its request. *See* Tex. R. Civ. P. 296. It found that Lyda Swinerton "suspended all work on the project on or about October 7, 2007." It also made several related findings: (1) "Park 8's assurances to [Lyda Swinerton that Park 8 was pursuing financing for the project] contained scant reliable information upon which a reasonable reliance could be founded;" (2) Lyda Swinerton "knew or, in the exercise of reasonable prudence, should have known that Park 8's assurances made before or after October 4, 2007 were illusory;" and (3) Lyda Swinerton "was reasonably justified in continuing to incur expense in reliance on Park 8's assurances

for not more than 90 days following the suspension of work."

The trial court then made numerous conclusions of law. It concluded that Lyda Swinerton "did not terminate the Contract on or about October 4, 2007, when [Lyda Swinerton] suspended work on the Project." Rather, "the Contract was constructively terminated as of January 4, 2008 (90 days following [Lyda Swinerton's] suspension of work) and the indebtedness concerning improvements to any of the Tracts accrued on or before that date." Accordingly, the court concluded that Lyda Swinerton's second, third, and fourth amended lien affidavits were untimely and therefore inferior to Cathay Bank's lien. The trial court also concluded, however, that Cathay Bank was "not entitled to equitable subrogation to the tax lien position held by the taxing jurisdictions [Cathay Bank had paid] to the extent that a non-judicial foreclosure of a tax lien would result in prejudice to [Lyda Swinerton]." The court therefore determined that Lyda Swinerton was entitled to a judicial foreclosure of its first amended lien affidavit to the extent of $863,301.70. Finally, it concluded that neither party should recover attorney's fees. A week later, Lyda Swinerton asked the trial court to file additional and amended findings of fact and conclusions of law, but it declined to do so. This appeal followed.

ANALYSIS

I.   **The trial court erred when it concluded that the construction contract between Lyda Swinerton and Park 8 was "constructively terminated."**

Lyda Swinerton argues in its first issue that the trial court erred when it concluded that the Park 8 contract was "constructively terminated" ninety days after Lyda Swinerton suspended work on the project, thereby making Lyda Swinerton's second, third, and fourth amended lien affidavits untimely and ineffective to

6

establish a mechanic's lien.[1]

The trial court based its determination that some of Lyda Swinerton's lien affidavits were not timely filed on the following conclusion of law: the contract between Park 8 and Lyda Swinerton "was constructively terminated as of January 4, 2008 (90 days following [Lyda Swinerton's] suspension of work) and the indebtedness concerning improvements to any of the Tracts accrued on or before that date." To be timely, Lyda Swinerton had to file its affidavits "not later than the 15th day of the fourth calendar month after the day on which the indebtedness accrue[d]." Tex. Prop. Code Ann. § 53.052 (West 2014). The second amended lien affidavit was filed June 12, 2008, and the third and fourth amended affidavits were filed thereafter.

We review a trial court's conclusions of law de novo. *Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 790 (Tex. App.—Houston [14th Dist.] 2016, no pet.). When performing a de novo review, we exercise our own judgment and redetermine each legal issue. *Id.* To make this determination, we consider whether the conclusions are correct based on the facts from which they are drawn. *Id.*

This appeal also requires us to review the trial court's interpretation and application of the Texas Property Code's provisions regarding mechanic's liens as well as the Texas Tax Code. Statutory interpretation presents a question of law subject to de novo review. *Texas Law Shield LLP v. Crowley*, 513 S.W.3d 582, 588 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). We look to the statute's plain

---

[1] Lyda Swinerton listed eight issues presented in its opening brief. But in the argument section of its brief, Lyda Swinerton distilled these eight issues to three. Because we ultimately reverse the trial court's judgment and remand this dispute to the trial court, we need not reach Lyda Swinerton's second issue challenging the trial court's determination of the scope and amount of Lyda Swinerton's lien or its third issue challenging the trial court's decision denying Lyda Swinerton recovery of its attorney's fees. *See* Tex. R. App. P. 47.1.

meaning because we presume that the Legislature intends the plain meaning of its words. *Id.* We strive to give full effect to all of the statutory terms. *In re Evans*, 130 S.W.3d 472, 486 (Tex. App.—Houston [14th Dist.] 2004, orig. proceeding). We presume that every word of a statute was used for a purpose, and every omitted word was purposefully not chosen. *Texas Law Shield*, 513 S.W.3d at 588.

Section 53.053(b) of the Texas Property Code addresses when a debt to an original contractor, such as Lyda Swinerton, accrues. *See* Tex. Prop. Code Ann. § 53.053(b). The statute provides that indebtedness to an original contractor accrues on the last day of the month in which the contract is terminated by a written declaration received by either the original contractor or the contracting party, or the contract is completed, finally settled, or abandoned. *Id.* It is undisputed that the Park 8 contract was never completed or finally settled. It is also undisputed on appeal that neither Lyda Swinerton nor Park 8 received a written declaration from the other terminating the contract.[2] We therefore turn to the final method the Property Code provides for determining when a debt to an original contractor

_____

[2] Cathay Bank argued in the trial court that Lyda Swinerton's May 20, 2008 Notice to Cure Letter was a written declaration of termination. Cathay Bank submitted a proposed finding of fact to that effect to the trial court. The trial court, however, rejected Cathay Bank's contention when it refused to make the proposed finding and then went on to conclude that the Park 8 contract was constructively terminated on January 4, 2008, more than four months before Lyda Swinerton's letter was sent. *See* Tex. R. Civ. P. 299; *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 253 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("In other words, where the trial court has been specifically requested to make a particular finding in support of its judgment and it fails to do so, the failure is tantamount to a refusal."). As a reviewing court, we are not at liberty to overturn the trial court's weighing of the evidence. *See Jafar v. Mohammed*, No. 14-14-00512-CV, 2016 WL 1455978, at *7 (Tex. App.—Houston [14th Dist.] April 12, 2016, no pet.) (mem. op.) ("In an appeal from a bench trial, we may not encroach upon the fact-finding role of the trial court, who alone determines the credibility of the witnesses, the weight to give their testimony, and whether to accept or reject all or any part of their testimony."); *One Thousand Six Hundred Four Dollars & Nine Cents ($1,604.09) in U.S. Currency v. State*, 484 S.W.3d 475, 481 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding) (stating it is province of the fact finder "to consider the circumstantial evidence, weigh witnesses' credibility, and make reasonable inferences from the evidence it chooses to believe").

accrues: abandonment.

The Property Code does not recognize "constructive termination" as a basis for determining when a debt to an original contractor accrues. *See* Tex. Prop. Code Ann. § 53.053(b); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 629 (Tex. 2008) (declining to read additional words into statute when construing meaning). Recognizing this, Cathay Bank argues on appeal that we should construe the trial court's conclusion of law regarding constructive termination as, in reality, a determination that the contract was abandoned on that date. We decline this invitation because both parties submitted proposed findings and conclusions regarding abandonment of the Park 8 contract and the trial court did not adopt them. We therefore treat the trial court's failure to adopt them as a deliberate refusal, and we cannot imply or presume any findings regarding abandonment. *See* Tex. R. Civ. P. 299; *Vickery*, 5 S.W.3d at 253 ("It is apparent from the record that the omission was deliberate; the element was 'requested' and refused."). Because the Property Code does not recognize "constructive termination" as one of the methods to determine when an indebtedness to an original contractor accrues, we sustain Lyda Swinerton's first issue on appeal.

The trial court's findings of fact and conclusions of law show that its conclusion that the Park 8 contract was "constructively terminated" on January 4, 2008, is the sole ground supporting its judgment excluding the amounts stated in Lyda Swinerton's second, third, and fourth amended lien affidavits from Lyda Swinerton's mechanic's lien. The trial court's erroneous conclusion of law regarding the date when Park 8's indebtedness accrued was therefore harmful to Lyda Swinerton. *See Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.) (explaining erroneous conclusion of law requires reversal if controlling findings of fact will not support judgment on correct legal theory).

9

## II. The trial court erred when it considered only the prejudice to Lyda Swinerton in its tax lien subrogation analysis.

In two cross-issues on appeal, Cathay Bank argues the trial court erred when it concluded that (1) Cathay Bank was not entitled to subrogation to the tax liens it had paid off using proceeds of its loan to Park 8; and (2) Cathay Bank's foreclosure of its deed of trust therefore did not extinguish Lyda Swinerton's mechanic's liens.[3] *See* Tex. Tax Code Ann. § 32.06 *et seq.* (West 2015). We address Cathay Bank's issues together.

Cathay Bank begins its cross-appeal by asserting that Lyda Swinerton "suffered no prejudice" when Cathay Bank "stepped into the tax authorities shoes" because it knew about the foreclosure sale and chose not to act. Although it is undisputed that Lyda Swinerton knew about the foreclosure sale, and even unsuccessfully sought a temporary injunction to prevent it from going forward, the only evidence in the record is that (1) Cathay Bank did not mention in its notice of the deed-of-trust foreclosure sale that it was foreclosing tax liens; and (2) Lyda Swinerton was unaware the bank was foreclosing a tax lien prior to the foreclosure sale. As a result, we conclude that Lyda Swinerton's knowledge of the foreclosure

---

[3] Cathay Bank also appears to argue in its brief that the trial court erred when it considered equitable principles in its subrogation analysis. We addressed, and rejected, this argument in our original opinion. To the extent Cathay Bank attempts to re-argue this issue, we refuse to address it again. *See Lyda Swinerton Builders, Inc.*, 409 S.W.3d at 242 ("A tax lien was 'paid off out of the proceeds of' the bank's loan, so it contends this provision entitles it to subrogation under a contractual subrogation theory. As we explain below, however, the bank's right to subrogation also depends upon equitable considerations."). Cathay Bank also challenges the trial court's conclusion of law that "judicial foreclosure of a tax lien is required unless the tax lien position is acquired through a statutory transfer." In Cathay Bank's view, this conclusion is erroneous because it does not adhere to our prior opinion. Assuming without deciding that Cathay Bank is correct, we hold the erroneous conclusion of law is harmless because the trial court nevertheless attempted to follow our prior opinion's instruction to perform a "hybrid" equitable analysis to determine whether Cathay Bank was entitled to subrogation of the tax liens (though that analysis was incorrect as we shall explain). *See Lyda Swinerton Builders, Inc.*, 409 S.W.3d at 247–48 ("Thus, such cases fall into a third, hybrid category." (internal quotation marks omitted)).

sale does not establish, as a matter of law, that Lyda Swinerton suffered no prejudice from the foreclosure sale. We therefore decline to revisit the determination made in our original opinion that Lyda Swinerton was prejudiced by Cathay Bank's foreclosure of the tax liens on the Park 8 property. *See Lyda Swinerton Builders, Inc.*, 409 S.W.3d at 248 (holding "that subrogating the bank to the tax liens would prejudice the builder because it would alter the foreclosure requirements that otherwise apply to tax liens.").

Cathay Bank next contends that the trial court erred in its equity analysis when it concluded that Cathay Bank was not entitled to subrogation of the paid-off tax liens because doing so would prejudice Lyda Swinerton. Cathay Bank argues that in considering only the prejudice to Lyda Swinerton, the trial court did not follow the instruction contained in our prior opinion to also consider other equitable factors such as whether Lyda Swinerton would be unjustly enriched if subrogation of the tax liens was not allowed. We agree with Cathay Bank.

In our prior opinion, we held that "the prejudice to the builder if subrogation is allowed, the extent of unjust enrichment to the builder if subrogation is not allowed, and the extent to which subrogation is necessary for the bank's equitable protection all play a role in the [equity] analysis . . . ." *Lyda Swinerton Builders, Inc.*, 409 S.W.3d at 250. The trial court was required to adhere to this holding. *See Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986) ("When this court remands a case and limits a subsequent trial to a particular issue, the trial court is restricted to a determination of that particular issue."). Now, faced with a subsequent appeal following remand, our "instructions given to [the] trial court in the former appeal will be adhered to and enforced." *Id.* We conclude that the trial court erred by basing its equity conclusion solely on the prejudice to Lyda Swinerton that would result from the non-judicial foreclosure of a tax lien. *Lyda Swinerton Builders, Inc.*,

409 S.W.3d at 250; *see Benavides v. Benavides*, No. 04-12-00864-CV, 2014 WL 235281, at \*3 (Tex. App.—San Antonio Jan. 22, 2014, pet. denied) (mem. op.) ("This contention ignores the instructions given to the trial court in our prior opinion to reconsider the equitable remedy of rescission.").

Because the trial court's conclusion of law shows that it failed to conduct a full equitable subrogation analysis as directed in our prior opinion, we conclude the trial court's error was harmful. *See Best v. Falcon Rock Cmty. Ass'n, Inc.*, No. 14-17-00052-CV, 2018 WL 4139092, at \*5 (Tex. App.—Houston [14th Dist.] Aug. 30, 2018, no pet.) (mem. op.) (holding trial court's erroneous conclusion of law defining term was harmful). We sustain Cathay Bank's issue on appeal to the extent it challenges the trial court's application of equitable principles to the question of Cathay Bank's entitlement to subrogation of the tax liens it paid with proceeds from its loan to Park 8.

## CONCLUSION

Having sustained Lyda Swinerton's first issue on appeal, as well as part of Cathay Bank's consolidated issue on appeal, we reverse the trial court's judgment and remand this case to the trial court for further proceedings consistent with this opinion.


/s/     J. Brett Busby
        Justice


Panel consists of Chief Justice Frost and Justices Busby and Brown.

12