**TEXAS LAW SHIELD LLP, Darren Rice, Edwin Walker, Walker & Rice PC, and Walker & Byington PLLC, Appellants**

v.

**Brad CROWLEY, Terrilyn Crowley, and All Others Similarly Situated, Appellees**

**NO. 14–15–00705–CV**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed December 20, 2016

Marcy Hogan Greer, Austin, TX, Roger D. Townsend, Patrick Kevin Leyendecker, Houston, TX, for Appellants.

Maitreya Tomlinson, Austin, TX, Brandy Wingate Voss, McAllen, TX, Kenneth R. Wynne, David Edwards Wynne, Houston, TX, for Appellees.

Panel consists of Justices Christopher, McCally, and Busby.

## OPINION

J. Brett Busby, Justice

In this interlocutory appeal, appellants Texas Law Shield LLP, Darren Rice, Edwin Walker, Walker & Rice, P.C., and Walker & Byington, P.L.L.C. appeal the trial court's order granting class certification to appellees Brad Crowley and Terrilyn Crowley, on behalf of themselves and all others similarly situated. Appellants raise multiple issues challenging the trial court's certification order. Because individual issues in this barratry suit will predominate over common issues, we conclude that the trial court abused its discretion when it certified the class. We therefore reverse the trial court's class certification order and remand the case to the trial court for further proceedings.

### BACKGROUND

In 2009, appellant Darren Rice, a partner in the law firm Walker, Rice & Wisdom (WRW),[1] developed a program he called Texas Law Shield. According to its website:

Texas Law Shield is a firearms legal defense retainer program developed by Walker, Rice, & Wisdom, P.C. Attorneys at Law. We are a law firm (not an insurance company or a referral service) that has developed a Texas wide program with a Multi–State option for all lawful gun owners in the State of Texas. You sign up and pay our firm a small monthly or annual retainer and you become a client of our firm. Then, if you ever are forced to use a gun, whether you pull the trigger or not, anywhere in the State of Texas (or in a state covered under the Multi–State Option) to defend yourself, others, or your property, we will defend your freedom for no additional attorneys' fees. We will represent you from the moment you call the special attorney-answered 24/7 hotline provided to you on your Individual Client/Membership card. We will defend you through the police investigation, the grand jury proceeding, and through trial, both criminal and civil, all for no additional attorneys' fee. Monthly retainer is only $10.95 per client, with annual programs for CHL holders and non-CHL gun owners available as well. This is peace of mind every gun owner can afford. Get protected. Get Texas Law Shield. It just makes sense!

Rice and his law partner, Edwin Walker, initially marketed the Texas Law Shield

---

1. Walker, Rice & Wisdom began its existence as a general partnership. The partners later converted it into a professional corporation. To avoid confusion, we refer to both iterations as WRW.

program themselves at gun shows. Rice eventually decided to start marketing the Texas Law Shield program at concealed handgun license (CHL) classes.

In 2012, a CHL class attendee sued Rice, Walker, and WRW for barratry. *See* Tex. Gov't Code Ann. § 82.0651 (West 2013). They eventually settled the case. Soon thereafter, Rice and Walker created a separate entity, Texas Law Shield LLP, to continue the Texas Law Shield program. Rice and Walker were the sole owners of Texas Law Shield. Texas Law Shield is licensed to sell legal services contracts under Chapter 953 of the Texas Occupations Code. Under a legal services contract, the licensed company agrees to obtain legal services for the purchaser of the contract through a contracting attorney. Tex. Occ. Code Ann. § 953.001(7) (West 2012). Chapter 953 authorizes the licensed company to employ registered sales representatives to sell or solicit the sale of legal services contracts. *Id.* §§ 953.001(10), 953.051.

At the same time that Texas Law Shield LLP was created, WRW became Walker & Rice, P.C.[2] Walker & Rice then signed an employment agreement with Texas Law Shield in which the law firm agreed to provide legal services to Texas Law Shield members for a monthly fee of $2.00 per member. The agreement also immediately created an attorney-client relationship between Walker & Rice and all Texas Law Shield members.

In 2014, Rice had Walker withdraw as an owner of Texas Law Shield. Rice then terminated the agreement between Texas Law Shield and Walker & Rice. Walker

formed a new law firm, Walker & Byington, P.L.L.C. Walker & Byington then signed an employment agreement with Texas Law Shield with the same terms as the terminated agreement with Walker & Rice.

As part of its effort to market the program, Texas Law Shield signed facility agreements with gun ranges offering CHL classes and with CHL instructors. Pursuant to these agreements, Texas Law Shield was allowed to market the Texas Law Shield program in conjunction with CHL classes and to post advertising and other materials at the facilities in exchange for a $30 payment for each person submitting a Texas Law Shield contract at the facility.[3] Texas Law Shield employed non-attorney sales representatives licensed under Chapter 953 of the Texas Occupations Code to make the in-person sales presentations at CHL classes. These sales representatives were paid a salary and not a commission based on the number of people signing a Texas Law Shield contract. Each sales representative developed his own sales presentation, and when the presentation would occur during the CHL class varied. The record includes evidence that presentations were made outside of the required curriculum time, such as before or after the class or during a break. According to Rice, between May 1, 2012 and April 9, 2015, approximately 100,000 people purchased legal services contracts from Texas Law Shield.

Brad and Terrilyn Crowley attended a CHL class on November 17, 2012 at Spring Guns and Ammo, a facility that had signed a facilities agreement with Texas

---

2. Rice testified that Walker & Rice, P.C. is still paid under the retainer agreements that people originally signed with WRW.

3. The facility agreements established a $120 "Facility Hourly Use Rate." They further provided that the facility would be "paid one quarter of an hour of the agreed upon Facility Hourly Use Rate" for each application submitted through the facility.

Law Shield. About midway through the class, their CHL instructor, Aaron Abernathy, introduced Thomas Blalock, a Texas Law Shield sales representative, and indicated that Blalock had an important message regarding legal services. Blalock then encouraged everyone to become Texas Law Shield clients or face possible financial ruin. Blalock stated that Texas Law Shield and its lawyers would represent them without any additional cost if they encountered legal issues concerning the use of their guns. Blalock further stated that clients would receive newsletters and legal advice whenever requested. Blalock described the cost as $11 per month or $130 per year, with an additional $19.95 set-up fee. Brad purchased a Texas Law Shield contract that day, but Terrilyn did not.

On October 30, 2013, the Crowleys filed suit against appellants, alleging that they had violated, and were continuing to violate, the Texas civil barratry statute through their CHL presentations. *See* Tex. Gov't Code Ann. § 82.0651.[4] To show a violation of the barratry statute, a plaintiff must demonstrate that the defendant attorney procured a contract or solicited a person in violation of either section 38.12 of the Texas Penal Code or rule 7.03 of the Texas Disciplinary Rules of Professional Conduct.[5] *Id.* The Crowleys alleged appellants violated both. In addition to pursuing their own claims, the Crowleys sought to represent a class of persons who were solicited during CHL classes to sign a contract for Texas Law Shield's program.

Appellants moved for summary judgment on the Crowleys' claims. The trial court initially denied appellants' motion. The trial court then held a class certification hearing. During the hearing, the court observed:

> Going as a law firm cold calling and saying, we have a wealth of expertise,

4. When the conduct in question began, section 82.0651 provided, in relevant part:

   (a) A client may bring an action to void a contract for legal services that was procured as a result of conduct violating the laws of this state or the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas regarding barratry by attorneys or other persons, and to recover [certain specified amounts]

   . . . .

   . . .

   (c) A person who was solicited by conduct violating the laws of this state or the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas regarding barratry by attorneys or other persons, but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry.

   Tex. Gov't Code Ann. § 82.0651 (West 2013). Although the statute was amended effective September 1, 2013, to narrow the kinds of conduct for which an action may be brought, we need not consider which version of the statute applies because the amended statute also covers the alleged conduct.

5. Rule 7.03 provides, in pertinent part:

   (a) A lawyer shall not by in-person contact, . . . seek professional employment concerning a matter arising out of a particular occurrence or event, or series of occurrences or events, from a prospective client or nonclient who has not sought the lawyer's advice regarding employment or with whom the lawyer has no family or past or present attorney-client relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain. . . .
   (b) A lawyer shall not pay, give, or offer to pay or give anything of value to a person not licensed to practice law for soliciting prospective clients for, or referring clients or prospective clients to, any lawyer or firm

   . . . .

   . . .

   (d) A lawyer shall not enter into an agreement for, charge for, or collect a fee for professional employment obtained in violation of Rule 7.03(a), (b), or (c).

   Tex. Disciplinary Rules Prof'l Conduct R. 7.03, *reprinted in* Tex. Gov't Code Ann. tit. 2, subtit. G, app. A (West 2013) (Tex. State Bar R. art. X, § 9). ·

we know you need this work, we would love to have some of your work in the future to me is far different than sending somebody over there, a non-lawyer, a salesperson and saying, I will pay you a commission or a flat fee for every retainer agreement you bring back. I think to me—frankly, if it is not barratry, it ought to be. That is no different in my mind than sending somebody to run a case, an individual case.

The court later explained that "[w]hen I say barratry, I don't think it is appropriate conduct. Whether or not it constituted barratry under the Texas Disciplinary Rules or the Penal Code is a different issue." The court observed that the case "involves conduct in circumstances when it comes to lawyers I would like to think for most of us it doesn't pass the smell test. But whether it is technically legal or not, ethical or not or certifiable as a class may be an entirely different issue."

Following the hearing, the trial court reconsidered its prior denial of appellants' motion for summary judgment and granted summary judgment for appellants on all of the Crowleys' barratry claims based on alleged violations of the Texas Penal Code as well as on alleged violations of the Disciplinary Rules, except for Rules 7.03(b) and (d). As to the remaining claims, the court granted the Crowleys' motion for class certification, concluding in a detailed order that "[t]he most significant common question to be decided is whether or not the essentially undisputed facts of the case [regarding the agreements to pay non-lawyers at the Facilities for each application submitted] constitute violations of Rule 7.03(b) and (d)." The court found that the " 'procured as a result of' language in § 82.0651(a) requires no causation proof beyond the evidence that a non-lawyer at the Facilities is entitled to be paid for each application and therefore requires no individual consideration of circumstances."

The court also concluded that damages presented a common question, as the civil barratry statute provides that each client or solicited person shall recover a $10,000 penalty. *See* Tex. Gov't Code Ann. § 82.0651(b), (d). The court certified a class defined as:

All persons in Texas who (a) were solicited to enter into a contract with Walker, Rice & Wisdom, P.C. or Texas Law Shield LLP from September 1, 2011 up to and including the date notice is first provided to the Class[,] at (b) a firearms class conducted at a facility or with an instructor whom Walker, Rice & Wisdom, P.C. or Texas Law Shield LLP had agreed to compensate based on the number of participants who submitted an application to obtain services from Walker, Rice & Wisdom, P.C. or Texas Law Shield LLP.

This interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(3) (West 2015).

### ANALYSIS

We begin by addressing the scope of this appeal. The trial court's interlocutory order granting summary judgment against certain of the Crowleys' claims is not before us. In addition, we agree with the trial court that the issue at this stage of the case is not whether appellants' conduct constituted barratry under sections 7.03(b) or (d) of the Texas Disciplinary Rules of Professional Conduct. Instead, the issue before us is whether the trial court abused its discretion when it certified the class action.

### I. Standard of review and applicable law

■ We review an order certifying a class under an abuse-of-discretion standard. *Stonebridge Life Ins. Co. v. Pitts,*

236 S.W.3d 201, 204–05 (Tex. 2007). All class actions must meet the four threshold requirements set forth in Rule 42(a): (1) numerosity—the class is so numerous that joinder of all members is impracticable; (2) commonality—there are questions of fact and law common to the class; (3) typicality—the representative's claims must be typical of the claims or defenses of the class; and (4) adequacy of representation—the representative parties must be able to fairly and adequately represent the interests of the class members. Tex. R. Civ. P. 42(a); *Southwestern Bell Tel. Co. v. Mktg. on Hold, Inc.*, 308 S.W.3d 909, 919 (Tex. 2010).

A class action must also satisfy at least one of the requirements in Rule 42(b). *Southwestern Bell Tel. Co.*, 308 S.W.3d at 919. This compliance must be demonstrated and may not be presumed. *Stonebridge Life Ins. Co.*, 236 S.W.3d at 205. The Crowleys, in their Third Amended Petition, alleged that their class action satisfies Rule 42(b)(3), which requires that common questions of law or fact predominate over any questions affecting only individual members and that class treatment is superior to other methods for the fair and efficient adjudication of the dispute. Tex. R. Civ. P. 42(b)(3). The non-exhaustive list of factors a trial court should consider in this determination are (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions, (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (D) the difficulties likely to be encountered in the management of a class action. *Southwestern Bell Tel. Co.*, 308 S.W.3d at 919.

This appeal also requires us to review the trial court's interpretation and application of the Texas civil barratry statute in order to determine the relevant questions of law and fact. Statutory interpretation presents a question of law subject to de novo review. *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 437 (Tex. 1997). We look to the statute's plain meaning because we presume that the Legislature intends the plain meaning of its words. *Dunham Eng'g, Inc. v. Sherwin–Williams Co.*, 404 S.W.3d 785, 789 (Tex. App.–Houston [14th Dist.] 2013, no pet.). We view statutory terms in context, giving them full effect. *Id.* We presume that every word of a statute was used for a purpose, and every omitted word was purposefully not chosen. *Id.* In determining the plain meaning of a statute, we construe the language according to the rules of grammar and common usage. *Id.* "As a general principle, we eschew constructions of a statute that render any statutory language meaningless or superfluous." *City of Dallas v. TCI West End, Inc.*, 463 S.W.3d 53, 57 (Tex. 2015).

Although appellants challenge whether the Crowleys' proposed class action met each Rule 42 requirement other than numerosity, we turn first to the question whether common issues will predominate in this case. *See Stonebridge Life Ins. Co.*, 236 S.W.3d at 205 ("Because predominance is one of the most stringent prerequisites to class-action certification, it is considered first in our review and it must be rigorously applied."). The predominance requirement prevents class certification when complex and diverse individual issues will overwhelm or confuse a jury or severely compromise a party's ability to present viable claims or defenses. *Id.* Class certification is not appropriate unless it can be determined at the outset of the litigation that individual issues can be con-

sidered in a manageable, time-efficient, and fair manner that does not diminish the substantive rights of any party to the litigation. *Id.* The test for predominance is not whether common issues outnumber uncommon issues, but whether common or individual issues will be the object of most of the efforts of the litigants and the court. *Id.* To make this determination, we identify the substantive issues that will control the litigation, assess which issues will predominate, and then determine whether the predominating issues are those common to the class. *Id.*

## II. The class claims do not meet the predominance requirement.

■ In their third issue on appeal, appellants contend the trial court abused its discretion when it certified the class because individualized issues, not common issues, will predominate at trial. The class definition includes all CHL students who were solicited to enter into a Texas Law Shield contract with WRW or Texas Law Shield LLP, regardless of whether they actually did so. Thus, one individualized issue will be whether each class member entered into a contract, as that variable affects the elements required to prove a civil barratry claim.

Under the civil barratry statute and the trial court's orders on summary judgment and class certification, each class member must prove that he or she was "solicited" to enter into a contract "by conduct violating" Rule 7.03(b) or (d) of the Texas Disciplinary Rules of Professional Conduct. Tex. Gov't Code Ann. § 82.0651(c).[6] In addition, each class member who did enter into a contract must prove that the con-

tract "was procured as a result of conduct violating" Rule 7.03. Tex. Gov't Code Ann. § 82.0651(a). Subsection b of Rule 7.03 prohibits a lawyer from paying or offering to pay a non-lawyer for soliciting prospective clients for the lawyer, while subsection d prohibits the lawyer from entering into an agreement for employment obtained in violation of subsection b. *See* Tex. Disciplinary Rules Prof'l Conduct R. 7.03.

Appellants argue that to meet these standards, each class member will be required to provide individualized evidence that he or she was "solicited by"—that is, actually received a request from—a non-lawyer firearms facility or instructor to enter into a Texas Law Shield contract. In addition, each will need to show that the solicitation violated Rule 7.03, which requires (among other things) individualized proof that the class member did not seek information from the facility or instructor about the contract. Appellants also argue that each class member who entered into a contract must show that it was "procured as a result of" an unlawful facility or instructor solicitation and not for some other reason unrelated to that solicitation. Appellants contend they are entitled to present a defense by cross-examining each member of the class regarding these individual issues.

In response to these arguments, the Crowleys contend that individualized evidence regarding the actions of individual class members is not required. Rather, they argue, the trial court correctly concluded that liability hinges on common evidence that appellants agreed to pay non-

---

6. Although subsection (c)'s "solicited" standard applies by its terms to people who did not enter into a contract as a result of the violating conduct, a class member who did enter into a contract is also required to prove a solicitation in order to fall within the class

as defined by the trial court. This requirement is consistent with subsection (a), which we discuss next, because a solicitation is relevant in determining whether the contract was procured as a result of the violating conduct.

lawyers for each submitted Texas Law Shield application.

We conclude that appellants have correctly identified issues requiring individualized proof, and that these issues will be the object of most of the efforts of counsel and the court. To explain our conclusion, we first examine the claims of those class members who entered into Texas Law Shield contracts. As noted above, section 82.0651(a) provides that "a client may bring an action to void a contract for legal services that was procured as a result of conduct" prohibited by, among other sources, Disciplinary Rule 7.03(b). The statute does not define the term "procure." We therefore must determine and apply its common, ordinary meaning. *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014). Procure is defined as to get possession of or to obtain something. *The Merriam–Webster Dictionary New Edition* 574 (2004). Thus, the civil barratry statute requires a plaintiff to establish that a lawyer obtained a legal services contract as a result of conduct prohibited by Rule 7.03(b).

We conclude that the phrase "procured as a result of" requires a member of the plaintiff class suing under subsection (a) of the civil barratry statute to establish that appellants obtained a signed Texas Law Shield contract from him or her as a result of conduct that violated Rule 7.03(b). *See Neese v. Lyon*, 479 S.W.3d 368, 385 (Tex. App.–Dallas 2015, no pet.) (holding statute "requires a client to prove more than that the defendant violated the laws or disciplinary rules regarding barratry .... The client must also prove that the lawyer 'procured' a legal-services contract due to such conduct."). This liability standard implicates the conduct of not only the lawyer and the person hired to solicit for the lawyer, but also the individual client seeking to void the legal services contract.

There was evidence before the trial court that some students entered into the contract for a reason unrelated to a facility or instructor solicitation, such as independent research or the recommendation of a friend. Such evidence tends to show that these particular contracts were not procured as a result of the conduct that the Crowleys allege constituted barratry.

Construing the statute to require proof that each contract was obtained as a result of a paid solicitation before the contract will be voided and a $10,000 penalty imposed gives meaning and effect to the words the Legislature chose. *Jaster*, 438 S.W.3d at 562 (stating that courts must give effect to every word, clause, and sentence of a statute). In contrast, adopting the Crowleys' contention that the focus of a civil barratry claim is exclusively on the conduct of the lawyer would render the Legislature's use of the phrase "procured as a result of" meaningless. Our construction does no violence to the statutory edict that courts liberally construe the civil barratry statute to accomplish its purpose to protect those in need of legal services against unethical, unlawful solicitation. *See* Tex. Gov't Code Ann. § 82.0651(e). Liberal construction does not authorize a court to disregard the statute's plain language. *Romo v. Payne*, 334 S.W.3d 364, 369 (Tex. App.–El Paso 2011, no pet.).

We next examine additional issues that must be addressed individually in deciding the claims of every class member, whether he or she entered into a contract or not. Plaintiffs alleging a violation of section 82.0651(c) must establish that they were "solicited by conduct violating" the disciplinary rules—in this case, the prohibition in Rule 7.03(b) and (d) against lawyers paying non-lawyers to solicit prospective clients or entering into agreements with solicited clients. Similarly, the class definition requires each member to prove that

he or she was "solicited to enter into a [Texas Law Shield] contract ... [at] a firearms class conducted at a facility or with an instructor who [appellants] had agreed to compensate based on the number of participants who submitted an application ...." Once again, this standard focuses not only on the lawyer and the person hired to solicit for the lawyer, but also on each individual class member alleging barratry—in particular, whether he or she was actually solicited to enter into a contract.

Individual issues will also arise regarding the conduct of the people paid to solicit for appellants: in particular, whether they solicited each class member. The trial court's order identifies the CHL facilities and instructors as the paid solicitors of which the Crowleys complain, and the class definition focuses on whether appellants agreed to compensate a class member's CHL facility or instructor based on the number of participants who applied for the program.[7] Although Texas Law Shield had agreements with over 500 facilities and instructors, the Crowleys argue that the number of agreements should not preclude certification because the trial court noted that they were form agreements. But these form agreements could prove at most that the facilities and instructors were entitled to payment, not that they solicited any particular class member. Individualized inquiry will be required on the latter issue. Although the agreements obligated the facilities and instructors to provide a place for Texas Law Shield to display promotional material and provide an employee to answer questions and process applications, the record also includes evidence that Texas Law Shield sales representatives—not instructors or facility employees—made sales presentations to CHL students, answered questions, and accepted applications for the program. In addition, evidence before the trial court shows that not every student attending a CHL class chose to remain to hear the sales presentations.

Finally, a solicitation that violates Rule 7.03 is one in which the "prospective client ... has not sought the lawyer's advice regarding employment." Tex. Disciplinary Rules Prof'l Conduct R. 7.03(a). The record indicates that some class members submitted an application without first hearing a sales presentation. Thus, individualized inquiry will be necessary to determine whether each class member sought advice regarding or membership in the Texas Law Shield program; if so, subsequent discussion with Texas Law Shield or facility representatives or acceptance of a program application would not violate Rule 7.03. *Cf. Kondos v. Lincoln Prop. Co.*, 110 S.W.3d 716, 721–22 (Tex. App.–Dallas 2003, no pet.) (holding, in class action alleging receipt of unsolicited faxes, that question whether each class member did or did not give permission to transmit faxes would be object of most of litigants' efforts and showed that individual issues predominated).

The Crowleys point out that only subsection (a) of Rule 7.03 requires that a solicitation was "not sought," while subsection (b) contains no such limitation. But the scope of the prohibition against a lawyer hiring a non-lawyer for "soliciting prospective clients" in subsection (b) should be informed by the scope of the prohibition against lawyers directly "seek[ing] professional employment ... from a prospective

client" in subsection (a).[8] As the official comment makes clear, Rule 7.03(b) forbids "having a non-lawyer do what a lawyer is ethically proscribed from doing." Tex. Disciplinary Rules Prof'l Conduct R. 7.03, cmt. 4; *see id.* preamble ¶ 10 (explaining that comments "provide guidance for interpreting the rules"); *Anderson Producing Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 421 n.4 (Tex. 1996) (noting that supreme court reviewed and amended comments in connection with adopting rules).

Because most of the court's and the litigants' time in the litigation will be spent trying to resolve individual issues under sections 82.0651(a) and (c) and Rule 7.02(b), we conclude the certified class does not meet the Rule 42(b)(3) predominance requirement. The trial court therefore abused its discretion when it certified the class.[9] *See Stonebridge Life Ins. Co.*, 236 S.W.3d at 207. We sustain appellants' third issue.

### CONCLUSION

We reverse the trial court's class certification order and remand this case to the trial court for further proceedings.

---

8. Antonin Scalia & Bryan A. Garner, *Reading Law* 167, 170 (2012) (discussing principles that courts should "consider the entire text, in view of its structure and of the physical and logical relation of its many parts," and that phrases repeated without material variation are presumed to bear the same meaning).

9. Because we have sustained appellants' third issue arguing that the certified class does not meet the Rule 42(b)(3) predominance requirement, we need not address appellants' remaining issues raising other grounds challenging the trial court's class certification order. *See* Tex. R. App. P. 47.1.