**AFFIRMED and Opinion Filed April 24, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-01146-CV

## WILLIAM DAVID HOLLIDAY, Appellant
## V.
## JOSEPH WICKER GRAY, Appellee

### On Appeal from the 160th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-17-10117

## MEMORANDUM OPINION

Before Justices Osborne, Partida-Kipness, and Pedersen, III
Opinion by Justice Osborne

Appellant William David Holliday, an attorney, sued appellee Joseph Wicker

Gray for breach of a contract to pay attorney's fees. Gray filed a counterclaim

seeking to void the contract, alleging it was procured by barratry. After a bench trial,

the trial court rendered judgment for Gray on Holliday's claims and on Gray's

counterclaim. In four issues, Holliday contends the trial court erred by (1) permitting

Gray to testify at trial, (2) concluding that Gray was not estopped from asserting his

barratry cause of action, (3) overruling Holliday's motion for new trial, and

(4) concluding that Holliday's conduct violated the barratry provisions of the penal

code and the Texas Disciplinary Rules of Professional Conduct. We affirm the trial court's judgment.

## BACKGROUND

Gray is a retired physician. Holliday is an attorney. The two had not met before the events giving rise to this lawsuit. While in Austin "researching an unrelated case" in 2015, Holliday discovered that Gray had unsuccessfully attempted to retrieve property—funds remaining in a profit-sharing trust from Gray's medical practice—that had escheated to the State of Texas. Holliday called Gray to see if he had been able to reclaim the property and found he had not. Holliday and Gray met to discuss the matter, and Holliday told Gray he would need an attorney to get his property back from the state.

About a year later, Holliday again contacted Gray to ask if he had been able to reclaim the property. Gray told Holliday he had not done so, and the two agreed to meet again to discuss Holliday's representation of Gray in the matter. Gray signed a contingency fee contract on December 5, 2016, in which he agreed to pay Holliday one-third of any recovery. In June, 2017, Gray received a check in the amount of $281,539.54 from the Texas Comptroller, and Holliday demanded his fee of $93,846.51. Gray refused to pay, and Holliday brought this suit alleging causes of action for breach of contract and money had and received, among others.

Gray filed a counterclaim to void the contract, alleging it was procured as a result of conduct violating section 38.12(a) or (b) of the Texas Penal Code and Rule

7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas. While the case was pending, Gray's attorney filed a grievance with the Office of the Chief Disciplinary Counsel of the State Bar of Texas regarding Holliday's conduct leading up to the signing of the contingency fee contract with Gray.

The case proceeded to trial before the court. The trial court rendered judgment declaring the contract void and ordering that Gray recover from Holliday a civil penalty in the amount of $10,000, $42,400.00 in attorney's fees, and conditional appellate fees.

After the trial court heard and overruled Holliday's initial motion for new trial and more than thirty days after judgment was rendered, Holliday received a letter from the Office of the Chief Disciplinary Counsel of the State Bar of Texas informing him that the Commission for Lawyer Discipline had decided to dismiss the disciplinary proceeding against him. Holliday filed a motion for new trial based on this information. The trial court did not rule on the motion.

This appeal followed.

## STANDARDS OF REVIEW

"A trial court's findings of fact issued after a bench trial have the same weight, and are judged by the same appellate standards, as a jury verdict." *Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019). When the appellate record contains a reporter's record, as in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *Wyde v. Francesconi*, 566 S.W.3d

890, 894 (Tex. App.—Dallas 2018, no pet.). When an appellant challenges the legal sufficiency of an adverse finding on which he did not have the burden of proof at trial, he must demonstrate there is no evidence to support the adverse finding. *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.). When reviewing the record, we determine whether any evidence supports the challenged finding. *Id.* If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Id.*; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (more than a scintilla of evidence exists when evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions").

When an appellant challenges the factual sufficiency of the evidence on an issue, we consider all the evidence supporting and contradicting the finding. *Sheetz*, 503 S.W.3d at 502. We set aside the finding for factual insufficiency only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). The trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Sheetz*, 503 S.W.3d at 502. As long as the evidence falls "within the zone of reasonable disagreement," we will not substitute our judgment for that of the fact-finder. *Id.* (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

We review de novo a trial court's conclusions of law. *See Compass Bank v. Goodman*, 416 S.W.3d 715, 718–19 (Tex. App.—Dallas 2013, pet. denied). We are

–4–

not bound by the trial court's legal conclusions, but conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Sheetz*, 503 S.W.3d at 502. Incorrect conclusions of law will not require reversal if the controlling findings of fact will support a correct legal theory. *Id.* Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law. *Id.*

We review the denial of a motion for new trial for an abuse of discretion. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). Under this standard, we may not overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules and principles. *James v. Witherite*, No. 05-17-00799-CV, 2018 WL 5869641, at *11 (Tex. App.—Dallas Nov. 9, 2018, no pet.) (mem. op).

We review a trial court's evidentiary rulings for abuse of discretion. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000). We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). Any error in admitting evidence is cured where the same evidence comes in elsewhere without objection. *Combs v. Gent*, 181 S.W.3d 378, 385 (Tex. App.—Dallas 2005, no pet.). Unless the trial court's erroneous evidentiary ruling probably caused the rendition of an improper judgment, we will not reverse the ruling. *Malone*, 972 S.W.2d at 43; *see also* TEX. R. EVID. 103(a) ("A party may claim error

in a ruling to admit or exclude evidence only if the error affects a substantial right of the party" and the party timely objects and states the specific ground for the objection).

## APPLICABLE LAW

"A client may bring an action to void a contract for legal services that was procured as a result of conduct violating Section 38.12(a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys . . . and to recover any amount that may be awarded under Subsection (b)." TEX. GOV'T CODE § 82.0651(a). A client who prevails in an action under section 82.0651(a) "shall recover from any person who committed barratry" all fees and expenses paid to that person under the contract, actual damages caused by the prohibited conduct, a penalty in the amount of $10,000, and reasonable and necessary attorney's fees. *Id.* § 82.0651(b)(1–5).

Section 38.12(a) of the Texas Penal Code provides in relevant part that a person commits an offense "if, with intent to obtain an economic benefit the person . . . solicits employment, either in person or by telephone, for himself or for another." Section 38.12(b) provides that a person commits an offense if the person "is a professional who knowingly accepts employment within the scope of the person's license, registration, or certification that results from the solicitation of employment in violation of Subsection (a)." Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas provides in part:

A lawyer shall not by in-person contact, or by regulated telephone or other electronic contact as defined in paragraph (f) seek professional employment concerning a matter arising out of a particular occurrence or event, or series of occurrences or events, from a prospective client or nonclient who has not sought the lawyer's advice regarding employment or with whom the lawyer has no family or past or present attorney-client relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain.

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 7.03(a), *reprinted in* TEX. GOV'T CODE tit. 2, subtit. G, app. A (TEX. STATE BAR R. art. X, § 9). Subparagraph (f) defines "regulated telephone or other electronic contact" as "any electronic communication initiated by a lawyer . . . that will result in the person contacted communicating in a live, interactive manner with any other person by telephone or other electronic means." *Id.* R. 7.03(f).

## DISCUSSION

In his four issues on appeal, Holliday does not contend that Gray was an existing client. He does not argue that Gray initiated contact with Holliday to obtain legal advice, nor does he disclaim pecuniary gain as his motive in contacting Gray. Instead, Holliday's issues are premised on his contentions that (1) it would be inequitable for Gray to retain the benefits of Holliday's services and (2) the Commission for Lawyer Discipline's nonsuit established that Holliday did not violate any rules of professional conduct. We first address Holliday's challenges to the trial court's legal conclusions before turning to his complaints about admission of evidence and the denial of his motion for new trial.

### 1. Challenge to Conclusions of Law

In his fourth issue, Holliday challenges the trial court's fifth, sixth, and seventh conclusions of law:

5.   Holliday's conduct described in paragraph No. 2 under "Findings of Fact" violates Section 38.12(a), Texas Penal Code.

6.   Holliday's conduct described in paragraph No. 3 under "Findings of Fact" violates Section 38.12(b), Texas Penal Code.

7.   Holliday's conducts [sic] described in paragraphs No. 4 and No. 5 under "Findings of Fact" violate[s] Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas.

In the findings of fact referenced in conclusions of law 5, 6, and 7, the trial court found:

2.   On at least one occasion, Holliday communicated in person for himself with Joseph Wicker Gray (herein "Gray"), a prospective client for Holliday, concerning Holliday's professional employment by Gray within the scope of Holliday's professional license for the purpose of providing professional services for Gray when neither Gray nor anyone acting on his behalf requested the communication. Further, Holliday knowingly accepted employment within the scope of his license as an attorney that resulted from Holliday's solicitation of employment.

3.   On at least one occasion, Holliday communicated by telephone for himself with Gray, a prospective client for Holliday, concerning Holliday's professional employment by Gray within the scope of Holliday's professional license for the purpose of providing professional services for Gray when neither Gray nor anyone acting on his behalf requested the communication. Further, Holliday knowingly accepted employment within the scope of his license as an attorney that resulted from Holliday's solicitation of employment.

4. On at least one occasion, Holliday, by in-person contact, sought professional employment concerning a matter arising out of a particular occurrence or event, or series of occurrences or events, with Gray, a prospective client, who had not sought Holliday's advice regarding employment and with whom Holliday had no family or past or present attorney-client relationship when a significant motive for Holliday's doing so was his pecuniary gain. Further, Holliday entered into an agreement with Gray for a fee for professional employment obtained by the in-person contact.

5. On at least one occasion, Holliday, by telephone contact, sought professional employment concerning a matter arising out of a particular occurrence or event, or series of occurrences or events, with Gray, a prospective client, who had not sought Holliday's advice regarding employment and with whom Holliday had no family or past or present attorney-client relationship when a significant motive for Holliday's doing so was his pecuniary gain. Further, Holliday entered into an agreement with Gray for a fee for professional employment obtained by the telephone contact.

The trial court's findings and conclusions track the language of the penal code sections and the disciplinary rule that Gray alleged Holliday violated.

Holliday argues that his conduct did not violate Texas Rule of Professional Conduct 7.03 because the Commission for Lawyer Discipline nonsuited the grievance filed by Gray's attorney. The Commission's notice of nonsuit, however, stated that the nonsuit was made without prejudice. "When a party files a nonsuit or dismissal without prejudice, it terminates a case from the moment it is filed but res judicata does not bar relitigation of the same claims." *Porter v. Harbuck*, No. 05-14-01429-CV, 2015 WL 7008580, at *3 (Tex. App.—Dallas Nov. 12, 2015, no pet.) (mem. op.). A nonsuit is not a determination of the merits of a dispute. *See Epps v.*

–9–

*Fowler*, 351 S.W.3d 862, 868 (Tex. 2011) (discussing effect of nonsuit). In this case, the merits were determined by the trial court, which found that Holliday engaged in conduct constituting a violation of the disciplinary rules.

Holliday also contends that Gray "is not a vulnerable and unknowing client that the barratry statute was passed to protect." He cites government code section 82.0651(e), providing that "This section [civil liability for prohibited barratry] shall be liberally construed and applied to promote its underlying purposes, which are to protect those in need of legal services against unethical, unlawful solicitation and to provide efficient and economical procedures to secure that protection." TEX. GOV'T CODE § 82.0651(e). He argues that Gray incurred no damages from Holliday's representation, and in fact accepted its benefits. He contends that Gray was unable to obtain the funds through his own efforts, and negotiated the fee agreement with Holliday after two meetings. He argues that Gray waited until Holliday had fully performed the contract, the money had been deposited into his account, and Holliday had sued him before filing a grievance and claiming that the contract was procured by barratry.

In support of his argument that Gray's conduct should be considered in determining whether Holliday procured the contract by barratry, Holliday relies on *Texas Law Shield LLP v. Crowley*, 513 S.W.3d 582, 590 (Tex. App.—Houston [14th Dist.] 2016, pet. denied), a class action by gun owners who were solicited to enter into contracts for legal defense services. The court concluded that individualized

–10–

proof would be needed for each plaintiff to establish that he or she was "solicited" to enter into a contract by conduct violating the barratry statute, requiring focus on the plaintiff's conduct—such as entering into the contract after conducting independent research or at the recommendation of a friend rather than in response to a solicitation—as well as the lawyer's. *See id.* The court explained, "[o]ur construction does no violence to the statutory edict that courts liberally construe the civil barratry statute to accomplish its purpose to protect those in need of legal services against unethical, unlawful solicitation. Liberal construction does not authorize a court to disregard the statute's plain language." *Id.* (citations omitted). Because each plaintiff would be required to prove that his or her contract was "procured as a result of conduct" prohibited by the barratry statute, common issues did not predominate in the putative class action. *See id.*

Here, in contrast, the evidence supporting the trial court's findings is undisputed. Holliday testified that he contacted Gray, a prospective client, by telephone and in person about obtaining professional employment within the scope of Holliday's license as an attorney. The evidence is also undisputed that Holliday did not know Gray, and neither Gray nor anyone acting on his behalf requested Holliday's communication. There was also evidence to support the trial court's finding that Holliday's "significant motive" in contacting Gray "was his pecuniary gain," given the terms of the contingency fee contract and the amount of the funds at issue. Unlike in *Crowley*, no facts exist to support a finding that Gray, not

–11–

Holloway, initiated the contacts that resulted in the representation. *Cf. id.* We conclude that the trial court's controlling findings of fact support its legal conclusions. *See Sheetz,* 503 S.W.3d at 502. We decide Holliday's fourth issue against him.[1]

## 2. Estoppel

In his second issue Holliday argues that Gray accepted the benefits of Holliday's full performance of the contract and is therefore estopped from prevailing on his counterclaim and from voiding the contract on the ground of barratry. He cites *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000), for the proposition that quasi-estoppel prevents a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. "The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Id.* He contends that Gray deposited the $281,539.54 check from the State and promised Holliday he would mail him a check for $93,846.51. Holliday argues that it would be unconscionable for Gray to benefit both from Holliday's full

---

[1] In his fourth issue Holliday also argues that Gray could not void the contract after Holliday substantially performed, and that Gray should not have been permitted to testify because he did not verify his interrogatory answers. We address these arguments in our discussion of Holliday's first and second issues.

–12–

performance—that is, the recovery of the escheated funds—and from the $10,000 barratry judgment.

In *Neese v. Lyon*, we considered whether an attorney's full performance of a fee agreement barred a client's claim for rescission under a prior version of government code section 82.065. *Neese v. Lyon*, 479 S.W.3d 368, 380–81 (Tex. App.—Dallas 2015, no pet.). We concluded that the then-applicable version of section 82.065 authorized a client to sue to avoid contingency-fee agreements procured by barratry and to seek the remedy of rescission and restitution even if the attorney had fully performed the agreement. *Id.* at 382. "[T]he bare fact that the parties have fully performed an agreement that is voidable under original § 82.065(b)[2] is not a bar to a claim for rescission and restitution." *Id.*

Holliday relies on *In re Estate of Arizola*, 401 S.W.3d 664, 671–72 (Tex. App.—San Antonio 2013, pet. denied), for the proposition that "[a]fter the attorney has fully performed the contract . . . the client is estopped from voiding the contract." In *Neese*, however, we expressly disagreed with *In re Estate of Arizola* on this point. *See Neese*, 479 S.W.3d at 382.

---

[2] "[O]riginal § 82.065(b)," the version applicable in *Neese*, addressed only contingent fee contracts. *See* Act of May 27, 1989, 71st Leg., R.S., ch. 866, § 3, 1989 Tex. Gen. Laws 3855, 3857 (amended 2011 and 2013) (current version at TEX. GOV'T CODE § 82.065). Current subsection (b) applies to "[a]ny contract for legal services" and specifically cites the applicable Penal Code and Texas Disciplinary Rule of Professional Conduct sections. *See* TEX. GOV'T CODE § 82.065(b).

Holliday also cites our conclusion in *Tillery & Tillery v. Zurich Insurance Co.*, 54 S.W.3d 356, 359–60 (Tex. App.—Dallas 2001, pet. denied), that an attorney could not enforce a contingent fee agreement where the client voided the agreement before the attorney had fully performed. Holliday contrasts his full performance of the contingent fee agreement before Gray sought to void it. But the agreement in *Tillery* was not procured by barratry, and the case pre-dates the 2011 enactment of government code section 82.0651, on which Gray relies for his claims. Section 82.0651 added new remedies for clients seeking to void contracts procured by barratry. *See Neese*, 479 S.W.3d at 382–83. Holliday's full performance is not a bar to Gray's recovery under section 82.0651.

Holliday also relies on the permissive language—a client "may" bring an action to void a contract for legal services—in section 82.0651(a) to argue that voiding the contract was not required. He contends that in construing the statutory language, we must presume the legislature intended a "just and reasonable" result. *See* TEX. GOV'T CODE § 311.021(3) (in enacting statute, it is presumed that "a just and reasonable result is intended"). He concludes that applying the statute to allow Gray to benefit from Holliday's representation without compensating Holliday is not a just and reasonable result. He also argues that Gray has been unjustly enriched by the trial court's judgment.

The permissive language in subsection 82.0651(a), however, must be read in context with the remainder of the section. *See TIC Energy & Chem., Inc. v. Martin*,

–14–

498 S.W.3d 68, 74–75 (Tex. 2016) (court construes statute as a whole to give effect to Legislature's intent as expressed in statute's language). Subsection (b) provides that a client who prevails "shall" recover all fees and expenses paid to the person who committed barratry, actual damages, a $10,000 penalty, and reasonable and necessary attorney's fees. TEX. GOV'T CODE § 82.0651(b)(1)–(5). The Legislature's use of the word "shall" can be either mandatory or directory, depending on the context. *Albertson's Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex. 1999). But in either case, the Legislature expressly authorized the remedy Holliday challenges here—the recovery of all fees and expenses paid under a barratrous contract—"and" a $10,000 penalty. *See Neese*, 479 S.W.3d at 382; TEX. GOV'T CODE § 82.0651(b) (joining list of remedies with "and"). Consequently, we decide Holliday's second issue against him.

### 3. Gray's testimony at trial

In his first issue, Holliday argues that the trial court abused its discretion by permitting Gray to testify at trial. He contends that Gray failed to verify his interrogatory answers and did not give a complete answer to Interrogatory No. 2 ("Describe any conversations you had with the Plaintiff, in person or telephonically.").

Holliday served discovery requests with his original petition on August 16, 2017. Gray timely served his discovery responses on October 9, 2017, but according to Holliday, did not sign or verify them. The case proceeded to trial on May 30,

2018. The day before trial, Holliday filed "Plaintiff's Amended Motion to Take Facts as Established and Exclude Certain Testimony Pursuant to TRCP Rules 193, 197, and 215 and Motion to Exclude Fact Testimony," in which he argued in part that because Gray's interrogatory answers were not verified and Gray's answer to Interrogatory No. 2 was insufficient,[3] Gray should not be permitted to testify. In the same motion, Holliday argued that the parties' motions for summary judgment (Holliday filed several and Gray filed one, all of which the trial court denied) and responses constituted "judicial admissions" that "there are no issues of material fact," so the trial court should not hear any testimony or evidence at trial.[4]

Holliday presented his motion at the start of trial. His argument, however, was limited to the contention that the court should exclude all evidence "because both parties have stipulated that there are no material questions of fact" by filing motions for summary judgment. The trial court denied the motion. Later in the trial, the trial court permitted Holliday to read Interrogatory No. 2 and Gray's response into the record, and Holliday "note[d] for the record that Defendant did not sign nor swear to these answers to interrogatories." He stated, "I'm going to object to Defendant

---

[3] Gray's answer identified two telephone conversations before the agreement was signed, an in-person meeting at which Gray signed the agreement, and subsequent telephone calls in which Holliday "demand[ed] meetings and money."

[4] We note that a "judicial admission" is an assertion of fact that acts as a formal waiver of proof of that fact. *See ReadyOne Indus., Inc. v. Flores*, 460 S.W.3d 656, 665 (Tex. App.—El Paso 2014, pet. denied). In his motion, Holliday did not argue that any particular fact had been judicially admitted by either party. Further, by denying the parties' motions for summary judgment, the trial court necessarily determined that genuine issues of material fact existed to be decided by a factfinder. *See* TEX. R. CIV. P. 166a(c).

attempting to put on any evidence or testimony that would have been covered by that." But he did not obtain a ruling from the trial court on this objection. In his closing argument, Holliday returned to the subject of his motion, but again combined it with his complaint that by moving for summary judgment, Gray had judicially admitted there were no fact issues to be tried.

Gray testified during his own presentation of evidence on his claim for barratry. Holliday did not renew his objection to Gray's testimony or obtain a ruling on it. When Gray testified to his conversations with Holliday, Holliday did not object on any basis. Later, Holliday cross-examined Gray on the same facts without stating that his questioning was subject to his objection that Gray did not verify his interrogatory answers or that the answers were incomplete. "To preserve error for appellate review, the complaining party must timely and specifically object to the evidence and obtain a ruling." *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007) (per curiam) (citing TEX. R. APP. P. 33.1(a) and TEX. R. EVID. 103(a)). "Error is waived if the complaining party allows the evidence to be introduced without objection." *Id.* We conclude that Holliday failed to preserve his complaint that Gray's testimony should have been excluded.[5] *See id.* We decide

---

[5] Holliday did raise the issue in his first motion for new trial. At the hearing on the motion, the trial court examined Gray's interrogatory answer and noted that Holliday had not filed a motion to compel. Gray's counsel argued that (1) Gray served his discovery responses, including his response to Interrogatory No. 2, more than seven months prior to trial; (2) he was unaware that the responses were not verified until Holliday filed his motion the day before trial; (3) Gray previously filed a summary judgment affidavit, properly verified, containing the same facts, (4) Holliday did not bring the issue to either Gray's or the

–17–

Holliday's first issue against him. *See Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 906 (appellate court will not reverse trial court's evidentiary ruling unless it probably caused the rendition of an improper judgment).

### 4. Motion for new trial or modification of the judgment

The trial court signed its judgment on June 22, 2018, and Holliday timely filed a motion for new trial on July 20, 2018. The trial court denied the motion by written order on August 27, 2018. After the trial court denied the motion, and more than thirty days after the judgment was signed, Holliday filed a series of motions for rehearing of his motion for new trial and for modification of the judgment. In his third issue, Holliday argues the trial court erred by denying his "Second Motion for Rehearing on Denial of Modification/Motion for New Trial" that he filed on September 24, 2018, ninety-four days after the trial court signed its judgment (the "September 24 motion").

In the September 24 motion, Holliday relied on a September 21, 2018 letter from the State Bar of Texas, Office of the Chief Disciplinary Counsel, Commission for Lawyer Discipline notifying Holliday that the Commission "has decided to

court's attention until the day before trial, (5) the interrogatory response identified the two conversations relevant to the parties' claims, and (6) there was no unfair surprise or unfair prejudice to Holliday to allow Gray to testify about the same communications that had been at issue in the lawsuit from the outset. After the hearing, the trial court signed an order denying Holliday's motion for new trial. Holliday has not challenged this ruling on appeal, but we note here that it was within the trial court's discretion to conclude that there was no unfair surprise or unfair prejudice to Holliday under these circumstances. *See* TEX. R. CIV. P. 193.6 (evidence not timely disclosed in discovery response not admissible unless court finds that there was good cause for "the failure to timely make, amend, or supplement the discovery response" or that the failure "will not unfairly surprise or unfairly prejudice the other parties").

dismiss" the disciplinary proceeding against him. Holliday argues that because he filed the September 24 motion promptly after receiving the letter, and because the Commission's dismissal of the proceeding would probably have produced a different result if a new trial were granted, the trial court abused its discretion by denying the motion. *See, e.g., Mitchell v. Bank of Am., N.A.*, 156 S.W.3d 622, 629 (Tex. App.—Dallas 2004, pet. denied) (party seeking new trial on ground of newly discovered evidence must show, among other factors, that the new evidence "is so material that it would probably produce a different result if a new trial were granted").

Gray responds that Holliday's September 24 motion was not timely because it was filed more than 30 days after the trial court rendered its judgment. Rule of civil procedure 329b(b) provides that "[o]ne or more amended motions for new trial may be filed without leave of court before any preceding motion for new trial filed by the movant is overruled and within thirty days after the judgment or other order complained of is signed." TEX. R. CIV. P. 329b(b). In *In re Brookshire Grocery Co.*, 250 S.W.3d 66, 69–70 (Tex. 2008), the supreme court explained that under rule 329b, an amended motion may be filed without leave of court "when: (1) no preceding motion for new trial has been overruled *and* (2) it is filed within thirty days of judgment." The court continued, "'[a]nd' is conjunctive: an amended new-trial motion is timely filed only *before* the court overrules a prior one." *Id.* at 69. Holliday's motion, filed 94 days after judgment and after the trial court had

overruled his first motion for new trial, did not meet either of rule 329b(b)'s requirements.[6] *See id.* We decide Holliday's third issue against him.

**CONCLUSION**

We affirm the trial court's judgment.

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

181146F.P05

---

[6] We note that subsection (g) of rule 329b permits a party to file a "motion to modify, correct, or reform a judgment" even when the trial court has overruled a motion for new trial. TEX. R. CIV. P. 329b(g). Holliday titled each of his post-trial motions as a "motion for modification of judgment or new trial." Even if subsection (g) permitted Holliday to file his September 24 motion as a motion to modify, however, the motion was untimely under subsection (b), having been filed more than thirty days after the trial court signed the judgment. *See* TEX. R. CIV. P. 329b(b).



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

WILLIAM DAVID HOLLIDAY, Appellant

No. 05-18-01146-CV     V.

JOSEPH WICKER GRAY, Appellee

On Appeal from the 160th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-17-10117. Opinion delivered by Justice Osborne; Justices Partida-Kipness and Pedersen, III participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Joseph Wicker Gray recover his costs of this appeal from appellant William David Holliday.

Judgment entered April 24, 2020